## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-60704-CIV-ALTMAN

**OSCAR BROWN**,

     *Petitioner,*

*v.*

**RICKY D. DIXON, SECRETARY,**
**DEPARTMENT OF CORRECTIONS,**[1]

     *Respondent.*

_____/

### <u>ORDER</u>

Our Petitioner, Oscar Brown, has filed a *pro se* Petition for Writ of Habeas Corpus under 28

U.S.C. § 2254. *See* Petition [ECF No. 1]. In it, he challenges certain aspects of his state-court conviction

and sentence from 2002. Having carefully reviewed the Petition and the record, we now **DISMISS**

part of it (Grounds One, Four, and Five) as procedurally defaulted, and we **DENY** the rest (Grounds

Two and Three) on the merits.

### THE FACTS

After a trial in 1999, a Broward jury convicted Brown of armed kidnapping with a firearm,

armed burglary of a dwelling, and three counts of aggravated assault with a firearm. *See* 1999 Jury

Verdict [ECF No. 11-1] at 11–15; 1999 Judgment [ECF No. 11-1] at 17–18. Having determined that

Brown was a "habitual felony offender," the state judge sentenced him to 35 years in prison. *See* 1999

Sentence [ECF No. 11-1] at 20–34. But, on Brown's appeal, *see* Notice of Appeal for 1999 Trial [ECF

---

[1] The original Respondent, Mark S. Inch, retired from his position as Secretary of the Florida
Department of Corrections on November 19, 2021. As a result, Inch's successor, Ricky D. Dixon,
was automatically substituted as the Respondent in this case. *See* FED. R. CIV. P. 25(d) ("An action
does not abate when a party in an official capacity dies, resigns, or otherwise
ceases to hold office while the action is pending. The officer's successor is automatically substituted
as a party."). The Clerk's Office shall **MAKE** that modification to the docket.

No. 11-1] at 36, the Fourth District Court of Appeal ("Fourth DCA") reversed and remanded for a new trial, *see Brown v. State*, 787 So. 2d 136, 139 (Fla. 4th DCA 2001).

In his second trial, the jury acquitted Brown of three counts of aggravated assault with a firearm but found him guilty of kidnapping and burglary of a dwelling. *See* 2002 Jury Verdict [ECF No. 11-1] at 83–87; *see also* Felony Order of Acquittal [ECF No. 11-1] at 88. Again, the trial judge sentenced him to 35 years in prison. *See* 2002 Judgment [ECF No. 11-1] at 90–91; 2002 Sentencing Order [ECF No. 11-1] at 93–98.

Another appeal followed. *See* 2002 Notice of Appeal [ECF No. 11-1] at 100. This time, the Fourth DCA affirmed without explanation. *See Brown v. State*, 834 So. 2d 178, 178 (Fla. 4th DCA 2002). Undeterred, Brown filed a *pro se* Motion for Rehearing, *see* Motion for Rehearing on Direct Appeal [ECF No. 11-1] at 143–52, which the Fourth DCA denied on January 7, 2003, *see* Order Denying Rehearing [ECF No. 11-1] at 156. The Fourth DCA issued its mandate on January 3, 2003, *see* Mandate of Direct Appeal [ECF No. 11-1] at 158, and Brown apparently never sought review from either the Florida or the U.S. Supreme Court, *see generally* Respondent's Exhibits Appendix 1 [ECF No. 11-1]; Respondent's Exhibits Appendix 2 [ECF No. 11-2].

On September 23, 2003, Brown filed a Motion for Postconviction Relief under FLA. R. CRIM. P. 3.850 ("Rule 3.850 Motion") [ECF No. 11-1] at 160–79, and the State responded, *see* State's Rule 3.850 Response [ECF No. 11-1] at 181. The postconviction trial court gave Brown an evidentiary hearing on only one of his claims—his claim that trial counsel was ineffective for not raising a voluntary-intoxication defense—and denied the remaining claims on the papers. *See* Order Denying Postconviction Motion in Part and Granting Evidentiary Hearing ("Postconviction Order") [ECF No. 11-1] at 169–70, 197. Once the evidence was in, *see* Postconviction Hr'g [ECF No. 12-2], the postconviction trial court denied the voluntary-intoxication claim too, *see* Order Denying Remaining Postconviction Claim ("Post-Hearing Order") [ECF No. 11-1] at 199–202.

The postconviction trial court then gave Brown one chance to amend by February 18, 2011. *See* Order Granting Opportunity to Amend [ECF No. 11-1] at 209. Brown "twice moved for an enlargement of time to file his amended motion. Said motions were both granted, with the last order filed March 9, 2011 allowing for 20 days from the date of the court's order[.]" State's 2017 Response [ECF No. 11-1] at 220. But nothing in the record suggests that Brown received any *additional* extensions, and Brown's postconviction counsel blew the extended deadline by submitting his amendment on May 1, 2017—more than six years *after* the March 29, 2011 window had closed. *See* Amendment to Ground One [ECF No. 11-1] at 211–15 (claiming that counsel was ineffective for failing to impeach or undermine the victim's testimony). In its response, the State argued (1) that Brown had "waived his opportunity to amend his claim" by missing the twice-extended deadline, and (2) that the claim failed on the merits. *See* State's 2017 Response at 217–23.

The postconviction trial court denied the amended claim "for [the] reasons set forth in the State's Response, which [was] incorporated by reference [t]herein." Order Denying Amended Claim [ECF No. 11-1] at 225–26. On appeal, *see* 2018 Notice of Appeal [ECF No. 11-1] at 228, the State chose *not* to raise timeliness as a defense, *see* Postconviction Answer Brief [ECF No. 11-1] at 275–92. The Fourth DCA summarily affirmed anyway, *see Brown v. State*, 256 So. 3d 867, 867 (Fla. 4th DCA 2018), and then denied a motion for rehearing, *see* Order Denying Motion for Rehearing [ECF No. 11-2] at 23. On December 21, 2018, the Fourth DCA issued its mandate on Brown's postconviction appeal. *See* Postconviction Mandate [ECF No. 11-2] at 25.

Brown filed this federal Petition on March 13, 2019.[2] *See* Petition at 13. In it, he advances the following five claims: (1) "[t]he jury's inconsistent verdicts as to Counts I and II of the information"

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

resulted in "a substantial violation of [Brown's] constitutional right[s]"; (2) "[i]neffective assistance of counsel for failing to object and ask for mistrial or curative jury instructions" or otherwise "failing to impeach [the] State's key witnesses with their prior trial testimony or depositions"; (3) "[i]neffective assistance of counsel for failure to ask the trial court for a voluntary intoxication jury instruction, and for failing to properly investigate this claim"; (4) "[c]umulative impact error where the errors of counsel combined to deprive the defendant of his constitutional right to a fair trial"; and (5) "[t]he trial court order denying . . . 'for the reasons stated in the state's response' is inadequate and insufficient and violates the Florida and United States Constitutions." *Id.*

**THE LAW**

### A.  AEDPA Generally

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)).

To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United State Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded [sic] disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (quotation marks omitted).

**B. Exhaustion**

AEDPA requires "total exhaustion." *Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved *Lundy*'s total exhaustion requirement[.]"). In other words, a habeas petitioner must "fairly present *every issue* raised in his federal petition to *the state's highest court*, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (emphases added & cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [federal courts] from reviewing the claim." *Id.* By the same token, when a petitioner has not "*properly* presented his claims to the state courts"—and where, as here, the petitioner's claims would be procedurally barred in state court—the claims are deemed "procedurally defaulted" in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

One more thing on procedural defaults: "Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief." *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996).

## ANALYSIS

As an initial matter, there is no dispute that the Petition is timely. "[A] person in custody pursuant to the judgment of a State court" has one year from the date on which his judgment became

final to file his habeas petition. 28 U.S.C. § 2244(d)(1). But that one-year limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (noting that the state can "waive the limitations bar"). And our Respondent has unambiguously waived the timeliness bar here. *See* Respondent's Federal Habeas Response ("Response") [ECF No. 10] at 8–9 ("The Petition, therefore, is timely under the one-year federal statute of limitations."). That's good enough for us. *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[A] district court is not required to doublecheck the State's math [for timeliness purposes]."). We turn, then, to the five claims themselves—starting with the three Brown failed to exhaust.

## I.      Grounds One, Four, and Five are Procedurally Defaulted

### A.  *Brown Failed to "Fairly Present" these Claims to the State Courts*

Habeas petitioners generally cannot raise in federal court claims that were not first exhausted in state court. *See* 28 U.S.C. § 2254(b)(1)(A) (requiring that "the applicant has exhausted the remedies available in the Courts of the state"). To qualify as exhausted, a federal claim must be "fairly presented" to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). And, to be fairly presented, "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y, Fla. Dep't of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (citing *Picard*, 404 U.S. at 275–76). Rather, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 275 (citations omitted). In doing so, the petitioner must present his claims in such a way "that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Kelley*, 377 F.3d at 1344–45 (citing *Picard*, 404 U.S. at 277). Finally, the petitioner must "present his claims to the state's highest court, even if such review is discretionary, if such review is part of the ordinary appellate review procedure." *Mancill v. Hall*, 545 F.3d 935, 939 (11th Cir. 2008).

In practice, these rules "afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).

Our Respondent, in a section titled "EXHAUSTION AND PROCEDURAL BAR," concedes that Brown presented Grounds Two and Three of his Petition to the State courts. *See* Response at 14–15. As far as we can tell, this is the Respondent's express waiver, so we accept it. *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (cleaned up)).[3] But Grounds One, Four, and Five are another matter. As to these, the State is clear: Brown, it says, failed to exhaust. *See* Response at 14 ("Claim I, on inconsistent verdicts, was raised on direct appeal, but not in terms of the federal constitution. Hence, Petitioner failed to exhaust this claim."); *id.* at 15 ("Claim IV, on cumulative errors, was asserted on appeal from the denial of the motion for post-conviction relief. But it was not asserted in the motion for post-conviction relief . . . . Claim V, on the trial court having relied on the State's response to the 3.850 motion, was also raised in the initial brief in the appeal from the denial of the motion but was not argued in the trial court."). And, after careful review, we agree.

---

[3] As we've suggested, "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair*, 416 F.3d at 1304 (same). We think the Respondent *has* "expressly waive[d]" the exhaustion requirement as to Grounds Two and Three here. It, after all, agreed—in a section of its Response titled "EXHAUSTION AND PROCEDURAL BAR"—that "Claims II and III *were* pursued in the post-conviction relief motion[.]" Response at 14–15 (emphasis added). That's good enough for us. But here's the point: Even if the Respondent *hadn't* expressly waived its exhaustion defense as to these two claims, we'd still have the authority to "skip over the procedural default analysis" and deny those claims on the merits—which is precisely what we do below. *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

We'll start with Ground One: Brown, it's true, *did* raise this claim—that the jury's verdict was inconsistent—on direct appeal. *See* Initial Brief in 2002 Direct Appeal [ECF No. 11-1] at 120–24 ("[T]he jury's verdicts were 'truly inconsistent,' thus entitling Appellant to vacation of his conviction and sentence as to Count I of the Information."). But Brown never presented this as a *federal* claim to the Fourth DCA. Instead, he argued only that "[t]he trial court should have granted [his] motion to vacate the jury's conviction . . . on Count 1 . . . since this conviction was inconsistent with the jury's acquittal of . . . Count III." *Id.* at 120. Brown, in fact, never cited a single federal case (or any federal doctrine or standard) on this issue in that appeal. *See generally* Initial Brief in 2002 Direct Appeal at 103–26. And he said nothing else that might've led the Fourth DCA to infer that he was advancing some *federal* claim. In these circumstances, we agree with the Respondent that no "reasonable reader" of Brown's appeal "would understand" that he was grounding his argument in federal law. *Kelley*, 377 F.3d at 1344–45 (citing *Picard*, 404 U.S. at 277). Brown thus failed to "afford the state courts a meaningful opportunity to consider allegations" that his *federal* rights had been infringed. *McNair*, 416 F.3d at 1302.

Our conclusion finds support in the Eleventh Circuit's decision in *McNair*, where the petitioner's "nine page petition . . . did not cite a single federal case; its only mention of federal law was a repetition of the concluding paragraph of his argument before the Court of Criminal Appeals." *Id.* at 1303. Affirming the district court's determination that McNair's claims were procedurally barred, the court held that McNair had not "fairly presented" his *federal* claim because:

> [he] never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that arises under federal law when jurors consider such evidence. Instead, he relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion (which itself did not mention the federal presumption of prejudice) only as part of a string citation illustrating various courts' holdings with respect to extraneous evidence in the jury room.

*Id.* at 1304.

Our case is even easier than *McNair*. There, remember, the petitioner had at least cited a federal district court's decision. In our case, by contrast, Brown's brief before the Fourth DCA cited *no* federal cases and outlined *no* federal doctrines or standards that might govern his inconsistent-verdict claim. In other words, if the *McNair* petitioner failed to exhaust his federal claim, so too did Brown.

And *McNair*'s holding on this issue is not at all aberrational. Eight years later, for example, in *Ivy v. Fla. Dep't of Corr.*, 543 F. App'x 923 (11th Cir. 2013), the Eleventh Circuit again affirmed the district court's imposition of a procedural bar, where—like Brown—the petitioner had failed to cite any federal law in his state-court appeal. As the court explained:

> Although Ivy summarily claimed on direct appeal of his state conviction that the state trial court violated his constitutional right to a full and fair cross-examination of his accuser, Ivy failed to indicate that this claim was federal in nature. He never labeled this claim as a federal claim. He did not cite the U.S. Constitution, a federal statute, or federal case law in support of this claim. He cited only state case law. And, the state case law he cited did not address federal law.

*Id.* at 927. The same could be said of Brown's direct appeal in this case. Because "federal habeas corpus relief does not lie for errors of state law," *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)), Ground One hasn't been fully exhausted.

Ground Five fails for similar reasons. In Ground Five, Brown blames "the state courts" for denying "postconviction relief by merely 'adopting the reasons given by the Respondent' in opposing the Motion"—a practice that, Brown says, "resulted in a record that is insufficiently clear to permit this Court to determine the basis for the district court's decision[.]" Petition at 10. As with Ground One, however, Brown failed to identify for the state courts the *federal* rights he now seeks to vindicate in Ground Five. In his Postconviction Initial Brief to the Fourth DCA on this issue, Brown made only passing reference to "his state *and federal* constitutional rights." Postconviction Initial Brief [ECF No. 11-1] at 271 (emphasis added). But he never identified any specific federal constitutional rights or cited

any federal standards. *See generally id.* Again, *McNair* is dispositive. There, the Eleventh Circuit

summarized the petitioner's pleadings before the state appellate court as follows:

> In his initial brief to the Court of Criminal Appeals, McNair . . . .
> [included] only two references to federal law. The first was a citation
> to *Jones v. Kemp*, 706 F. Supp. 1534 (N.D. Ga. 1989), which was one of
> seven cases included in a string citation supporting McNair's claim that
> "jurors may not consider extraneous evidence during their
> deliberations and courts have consistently and repeatedly reversed
> convictions where such consideration has occurred." The other
> reference to federal law came in the closing paragraph of McNair's
> argument, when he wrote that the jurors' consideration of the Bible
> violated his rights "protected by the Fifth, Sixth, Eighth[,] and
> Fourteenth Amendments to the United States Constitution, the
> Alabama Constitution[,] and Alabama law." Importantly, McNair
> never mentioned, much less argued, the federal standard that
> extraneous evidence is presumptively prejudicial.

*McNair*, 416 F.3d at 1303 (cleaned up). This, the court held, wasn't nearly enough: "McNair's

references to federal law in his state habeas proceedings are exactly the type of needles in the haystack

that we have previously held are insufficient to satisfy the exhaustion requirement. McNair never cited

any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor

did he mention the presumption of prejudice that arises under federal law when jurors consider such

evidence." *Id.* at 1303–04 (citations omitted). Given this finding, the result in *McNair* was unavoidable:

"A careful review of the record makes it clear that McNair did not fairly present his federal

constitutional claim to the state court. He therefore failed to exhaust his state court remedies and is

procedurally barred from raising his non-exhausted federal claim in his federal habeas petition." *Id.* at

1304.

Again, our case is even easier. Brown, after all, pointed the state courts to *no* federal case and

identified in his Postconviction Initial Brief *no* federal constitutional rights. *See* Postconviction Initial

Brief at 271–72. If McNair's reference to the "Fifth, Sixth, and Fourteenth Amendment[s]" wasn't

good enough, our Petitioner's passing reference to his "federal constitutional rights" doesn't come

close to satisfying the exhaustion requirement. Ground Five, in sum, is likewise unexhausted.

Brown advanced Ground Four—that counsel's cumulative errors deprived him of a fair trial, *see* Petition at 9—in his postconviction appeal before the Fourth DCA, *see* Postconviction Initial Brief at 270–71 ("Oscar Brown asserts that the singular and *cumulative* effect of [his attorney's and the judge's] errors set forth, supra, substantially prejudiced his rights to a fair trial and to a meaningful adversarial testing of the State's case." (emphasis added)). And we agree that Brown had no obligation to assert this claim on direct appeal. *See Telisme v. State*, 259 So. 3d 862, 863 (Fla. 4th DCA 2018) ("In general, this court will not consider a claim of ineffective assistance of counsel on direct appeal. However, ineffective assistance that is apparent on the face of the record and which causes obvious prejudice may be considered on direct appeal." (cleaned up)). But, under state law, he did have to bring his claim of ineffective assistance of *trial* counsel to the attention of the postconviction *trial* court. *See Owens v. State*, 920 So. 2d 59, 61 (Fla. 4th DCA 2005) ("We decline to consider the merits of these motions [challenging counsel's ineffectiveness at trial] before the trial court does so and thus reverse and remand for the trial court to consider both motions on the merits."). And, to have properly exhausted his claim, he needed to comply with *all* applicable state procedures. *See Mason*, 605 F.3d at 1119 ("If a petitioner fails to properly present his claim to the state court—by exhausting his claims and complying with the *applicable state procedure*—prior to bringing his federal habeas claim, then AEDPA typically bars us from reviewing the claim." (cleaned up & emphasis added)); *see also Powell v. Allen*, 602 F.3d 1263, 1269 (11th Cir. 2010) ("Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round of the State's established appellate review process*." (cleaned up & emphasis added)). Unfortunately, as the Respondent points out, this claim "was not raised in the [postconviction] trial court." Response at 15; *see generally* Rule 3.850 Motion [ECF No. 11-1] at 160–79 (not advancing this claim); Motion for Rehearing on Rule 3.850 Denial [ECF No. 11-1] at 204–07 (same). Ground Four, in other words, isn't properly exhausted either. *See, e.g., Crayton v. Sec'y, Fla. Dep't of Corr.*, 2019 WL 2374452, at *4 (11th Cir.

May 15, 2019) ("Although Mr. Crayton's first *pro se* Rule 3.850 motion raised several ineffective assistance claims, *none mentioned the purported failure to suppressed [sic] statements* made without the benefit of *Miranda* warnings. As the District Court found, this claim was not fairly presented to the state court." (emphasis added)).

### B. These Unexhausted Claims are Procedurally Defaulted

Generally speaking, "mixed" petitions—those with both exhausted and unexhausted claims—must be dismissed, and the petitioner should be given the option of going back to present his claims in state court. *Kelley*, 377 F.3d at 1351 ("[A] district court must dismiss such mixed petitions, leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." (cleaned up)). But, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless judicial ping-pong and just treat those claims now barred by state law as no basis for federal habeas relief." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (cleaned up). Put another way, "where all the unexhausted claims are procedurally barred from being considered in Florida courts, it would serve no purpose to dismiss the petition for further exhaustion [by issuing a stay] because review of those claims is unavailable in state courts." *Id.*

And there's no doubt that these three claims would be procedurally barred in state court. As we've said, Ground One had to be presented as a federal claim on direct appeal. *See Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion[.]"); *see also Pope v. Rich*, 358 F.3d 852, 853 (11th Cir. 2004) ("The United States Supreme Court has interpreted § 2254(c) to require a state prisoner to present his claims to the state's highest court, even if review is discretionary, when such review is part of the ordinary appellate review procedure." (citing *O'Sullivan*, 526 U.S. at 845)). Since Brown failed to present Ground One *as a federal*

*claim* on direct appeal—and given that his direct appeal came to an end way back in 2003, *see* Order Denying Rehearing—he has no means of exhausting this claim now.

Ground Five meets a similar fate. In this claim, remember, Brown challenges the *postconviction* trial court's decision to incorporate the State's Rule 3.850 Response as its own. *See* Petition at 10. Again, then, Brown had to advance this as a *federal* claim in his postconviction appeal. *See Picard*, 404 U.S. at 275 ("We emphasize that the *federal* claim must be fairly presented to the state courts [to exhaust properly]." (emphasis added)); *Pope v. Sec'y, Fla. Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("[A]n issue is exhausted if the reasonable reader would understand the claim's particular legal basis and specific factual foundation to be the same as it was presented in state court." (cleaned up)). But he failed to do that. *See* Postconviction Initial Brief at 271 (mentioning "his state and *federal* constitutional rights" only in passing and without identifying any specific federal right (emphasis added)); *see also* Postconviction Reply Brief [ECF No. 11-2] at 12 ("The Appellant relies upon the facts and law presented in the Initial Brief in reply to the State."). And, since his postconviction appeal came to a close in 2018, *see* Postconviction Mandate, it's now way too late to fix this problem.

Finally, Brown can no longer exhaust Ground Four because, in Florida, Rule 3.850 motions must be filed within two years of the final judgment.[4] *See* FLA. R. CRIM. P. 3.850(b) ("A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final[.]"). "For purposes of this rule, the two-year period begins to run when [direct-appeal] proceedings have concluded and the court issues a mandate, or, if no appellate proceedings are initiated, thirty days after the judgment and sentence become final." *Cave v. State*, 289 So. 3d 980,

---

[4] In Florida, a criminal defendant generally doesn't have to advance his ineffective-assistance-of-trial-counsel claims on direct appeal. *See Bruno*, 807 So. 2d at 63 ("[A] claim of ineffectiveness generally can be raised in a 3.850 motion but not on direct appeal.").

981 (Fla. 1st DCA 2020). The Fourth DCA issued its mandate on the direct appeal Brown took after his second trial on January 3, 2003. *See generally* Direct Appeal Mandate. Brown's window for filing another Rule 3.850 motion in state court thus expired on January 3, 2005. So, we won't give Brown another chance to exhaust his claims in state court. *See Greenwood v. Sec'y, Fla. Dep't of Corr.*, 794, F. App'x 831, 834 (11th Cir. 2019) ("It is clear that Greenwood's unexhausted claim would be procedurally barred in state court because he has not alleged newly discovered evidence or a new constitutional right," and "second or successive Rule 3.850 petitions are not permitted absent allegations of newly discovered evidence or a new constitutional right" (cleaned up)).

### C. *Neither Exception to the Procedural Bar Applies*

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."); *see also Tharpe v. Warden*, 898 F.3d 1342, 1346 (11th Cir. 2018) ("A federal court cannot review a procedurally defaulted claim unless the petitioner can show cause for the failure to properly present the claim and actual prejudice." (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977))). "To establish 'cause' for a procedural default, a petitioner must demonstrate that some objective factor *external to the defense* impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (emphasis added); *see also Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." (cleaned up)). "To establish prejudice, a petitioner must show that there is at least a

reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017) (cleaned up). "[A]llegations [supporting cause and prejudice] must be factual and specific, not conclusory." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). Neither exception saves Brown here.

### 1.  *Cause and Prejudice*

Brown doesn't even try to excuse his failure to exhaust Grounds One, Four, and Five by pointing to some "external cause," *see generally* Petition—which is reason enough to stop here, *see Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *see also United States v. Campbell*, 2022 WL 468677, at *7 (11th Cir. Feb. 16, 2022) (en banc) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."). Nor could he have shown cause had he tried.[5] In Ground One, remember, Brown blames the trial court for accepting (what he says is) an inconsistent verdict. *See* Petition at 4–5. As we've explained, Florida law requires criminal defendants to raise claims of trial-court error on direct appeal. *See Bruno*, 807 So. 2d at 63 ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion[.]"). Although Brown's appellate lawyer asserted (what is now) Ground One in his brief on direct appeal, he never suggested that the alleged inconsistency of the jury's verdict violated any *federal* law. *See generally* Initial Brief in 2002 Direct Appeal (failing to make any such argument). Based on "principles of agency law," Brown "bears the risk of negligent conduct on the part of his agent."

---

[5] Brown *does* insist that he "exhausted each of his claims in the state courts." Reply [ECF No. 13] at 8. But he doesn't point to any fact in the record to support this claim. *See generally* Petition; Reply. In his Reply, Brown suggests that, by not contending *in state court* that these claims were procedurally defaulted, the Respondent has "waived (or, more properly, forfeited)" its right to make that argument here. Reply at 7. This makes no sense. The claims are procedurally defaulted because *Brown* failed to raise them in state court. The Respondent had no obligation *either* (1) to predict that Brown would later advance *in federal court* three claims he had never pushed in state court, *or* (2) to tell Brown about the consequences of his failure to present those claims sooner.

*Maples*, 565 U.S. at 281–82. In other words, Brown is "bound" by his appellate lawyer's "oversight"— if any—"and cannot rely on it to establish cause" because the appellate lawyer's error wasn't "external" to the defense. *Id.* at 280–81.

Ground Four fares no better. In that claim, again, Brown blames his trial counsel for a long litany of (perceived) errors. *See* Petition at 9. As we've said, "a claim of ineffectiveness generally can be raised in a 3.850 motion but not on direct appeal." *Bruno*, 807 So. 2d at 63. But Brown never advanced this claim in his Rule 3.850 Motion, *see generally* Rule 3.850 Motion—and he never even tries to justify this failure here, *see generally* Petition; Reply [ECF No. 13]. He does (it's true) claim that he included this argument in his direct appeal. *See* Petition at 9 (marking "Yes" to the question: "If you appealed from the judgment of conviction did you raise this issue [on direct appeal]?"). But that's just false. *See generally* Initial Brief in 2002 Direct Appeal (failing to raise this point). Nor could he have raised this argument on direct appeal. *See Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987) ("Generally, ineffective assistance of trial counsel will not be cognizable on direct appeal[.]"). Either way, though, there's no suggestion anywhere in the record that some *external* cause prevented Brown from making this claim in his Rule 3.850 Motion. *See Maples*, 565 U.S. at 280–81. And that's probably because Brown, as a practical matter, *cannot* show that he didn't know about this claim *when* he filed his initial Rule 3.850 Motion. This claim, after all, is premised on the "cumulative" errors (he says) he saw in his lawyer's *in-court* performance. *See* Petition at 9 (chastising counsel's "cumulative" performance); Rule 3.850 Motion at 162–63 (criticizing counsel for "fail[ing] to object and ask for mistrial or curative jury instructions," "fail[ing] to impeach" witnesses, "fail[ing] to ask for voluntary intoxication jury instruction," "fail[ing] to call key witnesses and introduce key evidence," "fail[ing] to

object to prosecutorial misconduct," and "fail[ing] to object to the trial court's departure from neutrality").[6]

And Ground Five is just the same. In this claim, Brown says that the postconviction trial court erred by incorporating the State's Rule 3.850 Response as its own. *See* Petition at 10. Although Brown presented this claim to the Fourth DCA in his appeal of the trial court's postconviction order, he failed to develop this argument with any citations to federal law, *see* Postconviction Initial Brief at 271–72—and he does nothing to excuse this omission now, *see generally* Petition; Reply. Instead, as with Ground Four, he falsely claims to have included this issue in his "direct appeal," *see* Petition at 10—something he *couldn't* have done, if only because this alleged error occurred during his *postconviction* proceedings, which (of course) post-dated his direct appeal.

Rather than rebut the Respondent's contention that he failed to exhaust Grounds One, Four, and Five, Brown pivots and insists that no "independent and adequate ground of state procedure"

---

[6] One last thing: For Ground Four, Brown could've relied on the equitable exception the Supreme Court recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court allowed courts to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim if the "claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 566 U.S. at 14. To make such a "substantial" showing, though, a petitioner must prove that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1270 (11th Cir. 2014) (cleaned up). But Brown doesn't invoke this exception, *see generally* Petition; Reply—which is reason enough to disregard *Martinez* here, *see Campbell*, 2022 WL 468677, at *7 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."). Even if we were to take up the *Martinez* exception for him, we still think he'd lose. That's because "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how *specific* errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (emphasis added). Probably for this reason, there is no "Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel." *Forrest v. Sec'y, Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009). And, in Ground Four, Brown relies only on trial counsel's (alleged) cumulative errors. That's just not enough to state a viable *Martinez* claim. *Cf. Wood v. Sec'y, Fla. Dep't of Corr.*, 793 F. App'x 813, 818 (11th Cir. 2019) ("In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance, the state court's holding is not contrary to, or an unreasonable application of, clearly established federal law.").

renders his federal claims "barred." *Id.* But the State never relied on the "adequate and independent state law" doctrine,[7] *see generally* Response, so Brown's position on this issue is really neither here nor there.

Since Brown hasn't established any external "cause" for his failure to exhaust Grounds One, Four, and Five, we needn't reach the "prejudice" prong. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice."); *Palmes v. Wainwright*, 725 F.2d 1511, 1525–26 (11th Cir. 1984) ("Because appellant has made no showing of cause we hold that this issue too is barred. We do not examine the prejudice, if any, that resulted from the failure to raise these issues because the *Sykes* standard for relief from its rule is in the conjunctive. Having failed to show 'cause,' appellant necessarily fails the conjunctive."); *Files v. Givens*, 2019 WL 7631002, at *3 (N.D. Ala. Nov. 22, 2019) ("Because the 'cause and prejudice' exception expresses in the conjunctive, a petitioner must prove both cause *and* prejudice to excuse his procedural default." (emphasis added)), *report and recommendation adopted*, 2020 WL 362937, at *1 (N.D. Ala. Jan. 22, 2020).

### 2. *Actual Innocence*

"[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). This exception, however, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Brown fails to argue that he's actually innocent. *See generally* Petition; Reply. Nor does he point to any "new evidence"

---

[7] "A corollary to the habeas statute's exhaustion requirement, the [adequate and independent state law] doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke*, 541 U.S. at 392.

that might support a contention that he is. *See generally* Petition; Reply. This exception is thus likewise inapplicable here.

***

For all these reasons, then, we hereby **DISMISS** Grounds One, Four, and Five as procedurally barred.

## II.    Grounds Two and Three Fail on the Merits

In Grounds Two and Three, Brown alleges that his trial counsel was constitutionally ineffective. In Ground Two, Brown points to four things that (he says) trial counsel should have done differently during his cross-examination of the victim.[8] *See* Petition at 6. In Ground Three, Brown blames his lawyer "for fail[ing] to ask the trial court for a voluntary intoxication jury instruction, and for failing to properly investigate this claim." Petition at 7.

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

---

[8] Brown actually says something a bit different in Ground Two. *See* Petition at 6 (castigating his lawyer's failure "to impeach [the] State's key *witnesses* with their prior trial testimony or depositions." (cleaned up & emphasis added)). In his factual averments, however, he challenges *only* counsel's cross-examination of *the victim. See id.* (insisting that counsel failed to "object to [the] admission" of the victim's statement that she feared Brown "because he had beaten up all them cops" (cleaned up)). "[A] petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by *specific* alleged errors in his counsel's performance." *Stano v. Dugger*, 921 F.2d 1125, 1153 (11th Cir. 1991) (cleaned up & emphasis added); *see also Strickland*, 466 U.S. 668, 694 (1984) (requiring a habeas petitioner to identify some "*specified* attorney error" (emphasis added)). Since Brown hasn't even tried to show that his lawyer was deficient in his cross-examination of any *other* witnesses, he's failed to "meet [the] heightened pleading requirements" that govern habeas cases. *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). He's also forfeited any such claim. *See Campbell*, 2022 WL 468677, at *7 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."). After all, while "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys," *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), that leniency "does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action," *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).

that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). In other words: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

Starting with the first ("deficient performance") factor, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* Specifically, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. In making this determination, courts must consider "all the circumstances." *Id.* But "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* (cleaned up). For this reason, "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are *virtually unchallengeable*." *Id.* at 690–91 (emphasis added). This is because "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). Courts should remember, in other words, that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*,

466 U.S. at 689. The Court's review of counsel's performance, therefore, should focus "not [on] what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). Finally, conclusory allegations of ineffectiveness are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012) ("Taking these vague and conclusory allegations together, the Alabama Court of Criminal Appeals determined that Boyd's claim fell far short, on its face, of establishing either *Strickland*'s performance or prejudice prong.").

Turning to *Strickland*'s second ("prejudice") prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Note, however, that a court need not address both *Strickland* prongs if the petitioner fails to carry his burden as to one of those prongs. *See id.* at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

A. *Ground Two*

In Ground Two, Brown claims that his Counsel was ineffective for failing "to object," to "ask for [a] mistrial," to request a "curative jury instruction[]," or to "impeach"[9] the victim after the victim

---

[9] Brown never actually argued to the Fourth DCA—as he does here—that his lawyer was ineffective "for failing to impeach" the victim, *compare* Petition at 6 (advancing this argument), *with* Postconviction Initial Brief (not including this argument). Nevertheless, as we've said, the Respondent has waived its exhaustion defense on this claim. *See* Response at 15 ("Claims II and III *were* pursued in the post-

testified that she was "afraid of [Brown] because [Brown] had beaten up all them cops." Petition at 6

(cleaned up).

Here's how the relevant exchange went down at trial:

> [Counsel:] I will ask you again. Why did you never escape from Oscar Brown, call the police, or call anyone for help?
>
> [Victim:] I was afraid. I was terrified. It seemed like any of this, anybody come told me say well, you can stay with me or he wouldn't be able to bother you, I wouldn't believe anybody. At the time he was very angry. I saw that seems like I was able to do anything. *Before, he beat up cops - -*
>
> [Counsel:] *Let's just stop right there.* Let's talk about January 4th and January 5th. Was Mr. Brown, when you got up on the morning of the 5th at [the] Holiday Inn, was he still in that rage, or angry?
>
> [Victim]: No.
>
> [Counsel:] Was he still that angry or in a rage when you are at Tony Taylor's apartment?
>
> [Victim]: No.
>
> [Counsel:] And was he still that angry or in a rage when you went with him to the Hollywood Transmission shop to check on the work being done on his car?
>
> [Victim]: No.

Trial Tr., Victim's Testimony ("Victim's Trial Test.") [ECF No. 12-1] at 208–09 (emphasis added).

---

conviction relief motion." (emphasis added)). Of course, we could've resolved this claim on the merits even if the Respondent *had* asserted an exhaustion defense. *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be *denied on the merits*, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." (emphasis added)). In any event, since the state court never reviewed this claim, we address its merits *de novo. See Williams v. Alabama*, 791 F.3d 1267, 1273 (11th Cir. 2015) ("If the state court did not reach the merits of a petitioner's claim[], we must review the claim *de novo*.").

The Fourth DCA considered and rejected this claim. *See Brown*, 256 So. 3d at 867 (summarily affirming Brown's conviction); Postconviction Initial Brief at 268–69 ("Trial counsel provided ineffective assistance of counsel when, without objecting, he permitted a key witness against him, Tomasina Sawyer, [to] ma[k]e an unprompted comment in front of the jury that 'she was afraid of Oscar Brown because he had beaten up all them cops!'"). Since the DCA affirmed without a written opinion, we presume that its decision was on the merits. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"). And we "look through" the Fourth DCA's summary opinion and assume that the DCA simply adopted the reasoning of the postconviction trial court. *See Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."); *Raulerson v. Warden*, 928 F.3d 987, 996 (11th Cir. 2019) ("[W]e presume that the summary denial adopted the superior court's reasoning unless the state rebuts the presumption by showing that the summary denial relied or most likely did rely on different grounds, which the state has not tried to do in this appeal." (cleaned up)); *Dragic v. Inch*, 2021 WL 836883, at *9 (S.D. Fla. Mar. 5, 2021) (Altman, J.) ("Since the Fourth DCA affirmed without a written decision, we look through to the next reasoned decision (i.e., the trial court's Order Denying Post Conviction Relief, which incorporated the State's Response) as the presumptive reasoning of the Fourth DCA." (cleaned up)).

But, in denying this claim, the postconviction trial court simply incorporated the State's 2017 Response.[10] *See* Order Denying Amended Claim at 225 ("[This claim] is hereby denied, for reasons set

---

[10] By the way, Florida law authorizes state courts to incorporate the State's response if the State has appended the relevant documents to the record. *See, e.g.*, *Holland v. State*, 916 So. 2d 750, 759 (Fla.

forth in the State's Response, which are incorporated by reference herein[.]"). To discern the Fourth

DCA's reasoning, then, we look to the State's 2017 Response, which advanced the following rationale:

"While defense counsel could have moved to strike th[e] testimony [at issue], or sought a mistrial, the

State would contend that Brown has failed to demonstrate that any alleged omission of counsel in this

regard so prejudiced him that the result of his trial has been rendered unreliable." State's 2017

Response at 222. In the State's view, because Brown's lawyer managed to "cut [the victim] off as

quickly as he did," this "one unsolicited reference to an irrelevant matter did not irretrievable [sic] taint

Brown's trial." *Id.* In other words, the State insisted, the victim's remark was not "a feature" of the

trial—and so, Brown failed to establish a "reasonable probability" that the outcome of the trial would

have been different "but for this [alleged] error, especially in light of the testimony from the State's

four eyewitnesses." *Id.*

### 1. *Counsel's Performance*

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the

two apply in tandem, review is doubly so." *Hittson*, 759 F.3d at 1248 (cleaned up). In other words, with

respect to Brown's first three complaints in Ground Two—that counsel should've objected to, moved

for a mistrial on, or asked for a curative instruction about the victim's remark—we don't need to

decide whether "*some* reasonable lawyer . . . could have acted, in the circumstances, as defense counsel

---

2005) ("The trial court found that the issues raised in this claim were refuted by the record. In support of this finding, the court adopted and incorporated by reference the reasoning from the State's 3.851 response. We affirm."); *Barnes v. State*, 38 So. 3d 218, 219–20 (Fla. 2d DCA 2010) ("[T]he rules of criminal and appellate procedure do not preclude a court from incorporating a response from the State if the State has provided the necessary record documents."); *Pierre v. State*, 982 So. 2d 1232, 1233 (Fla. 4th DCA 2008) ("We agree with the state's response that the plea colloquy, attached to the state's response which the trial court incorporated into its order of denial, does refute the first part of the claim."). Since the State's 2017 Response repeatedly cited to its 11 exhibits, *see* State's 2017 Response at 217–23 (referring to, and relying on, Exhibits I–XI), we think it's fair to say that the State's 2017 Response included an appended record. We thus don't see how the postconviction trial court committed *any* error under Florida law.

acted," the standard that ordinarily governs *Strickland*'s performance prong on *de novo* review. *Waters*, 46 F.3d at 1512 (emphasis added). We ask, instead, only whether the state court's *Strickland* analysis was unreasonable. *See Hittson*, 759 F.3d at 1248 ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (cleaned up))).

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. And "[a] state court's decision is reasonable so long as fairminded jurists could disagree on the correctness of the state court's decision." *Jenkins v. Comm'r, Alabama Dep't of Corr.*, 963 F.3d 1248, 1263 (11th Cir. 2020) (cleaned up). For that reason, "a prisoner must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 1263–64 (cleaned up).[11]

For four reasons, Ground Two fails here. *First*, counsel may have had good reason to avoid highlighting the victim's testimony that Brown "beat up" police officers. And that's precisely the strategy he seems to have followed. Again, according to the trial transcript, when the victim offered that stray remark, counsel immediately cut her off and quickly pivoted to another topic. *See* Victim's Trial Test. at 208–09 ("Q: I will ask you again. Why did you never escape from Oscar Brown, call the police, or call anyone for help? A: I was afraid . . . . At the time[,] he was very angry . . . . *Before, he beat up cops* - - Q: *Let's just stop right there*. Let's talk about January 4th and January 5th. Was Mr. Brown, when you got up on the morning of the 5th at [the] Holiday Inn, was he still in that rage, or angry?" (emphasis added)). But suppose that, instead of pivoting, the lawyer had drilled down on the testimony

---

[11] Of course, as we've said—*q.v.*, note 9—we review Brown's fourth claim in Ground Two (that counsel should've *impeached* the victim) *de novo*.

by impeaching her recollection of the fight with police, by calling for a mistrial, by objecting in front of the jury, or—perhaps worst of all—by asking the judge to discuss the issue further with the jurors in the form of a curative instruction. In doing each of these things, of course, counsel would have *both* highlighted the testimony *and* indicated that the testimony was harmful to the defense. He may also have opened up a pandora's box he wasn't prepared for. What, after all, might the victim have said— what daggers might she have unleashed—if she'd been allowed to expand on this allegation? No, in these circumstances, we agree with counsel that it was far better to move on without fanfare or further elaboration. As the Third Circuit explained in a similar context, "a skilled defense counsel may not have objected or requested a curative instruction in order to avoid highlighting [the witness's] testimony." *Jackson v. Carroll*, 161 F. App'x 190, 194 n.3 (3d Cir. 2005).

*Second*, and relatedly, counsel may have felt that the comment, if left alone (which is to say, without anything to corroborate it), could prove *helpful* to the defense. To understand why, let's remember what this case was about: A woman claimed that Brown had assaulted and kidnapped her— even though, when given multiple opportunities, she failed to alert police or cry out for help. The viability of the prosecution's case, in sum, hinged (at least in part) on the victim's credibility. Given all this, counsel may have felt that the victim's attempt to further besmirch Brown's character—by launching a somewhat-unlikely allegation that Brown had "beat up cops"—was just the kind of thing that, if left uncorroborated, could *help* him undermine her credibility. And, given that the State had no such evidence of Brown beating up police officers, counsel may have wanted to leave that comment wafting around in the jurors' minds—as just another example of an aggrieved woman launching unsupported, and incredible, allegations against an innocent man. It's well-settled that "counsel can for reasonable strategic reasons refrain from making a valid objection or moving for relief their client is entitled to if there are reasonable strategic reasons for not objecting or moving." *Brewster v. Hetzel*, 913 F.3d 1042, 1057 (11th Cir. 2019). And "[t]here is a strong presumption that counsel's attention to

certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Richter*, 562 U.S. at 109 (cleaned up); *see also Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (relying "upon certain lines of defense to the exclusion of others" is a valid strategic decision that will rarely, if ever, be disturbed on habeas review). Now, of course, in retrospect, counsel's strategy—whatever it was— didn't quite work out for Brown. But we must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Chandler*, 218 F.3d at 1314 ("We must avoid second-guessing counsel's performance[.]").

*Third*, defense lawyers often use special care in examining witnesses who (as here) claim to have been abused. And with good reason: lawyers don't want to look as though they're beating up on sympathetic victims. *See, e.g., Dorsey v. Chapman*, 262 F.3d 1181, 1185–86 (11th Cir. 2001) (concluding that counsel pursued a reasonable strategy by choosing *not* to impeach "the credibility of the [witness's] alternate personalities' testimony while she was in a dissociative state"); *Sirias v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 5440336, at *19 (M.D. Fla. Sept. 15, 2015) ("[A]ggressive crossexamination of a very young witness could have the unwelcome effect of eliciting sympathy for the victim. It would be sound trial strategy to let a child-witness' testimony stand on its own[.]").

*Fourth*, having reviewed the cross-examination in its entirety, we have little difficulty concluding that counsel did an adequate job—whatever one thinks of his decision not to object to the victim's stray comment. He, after all, repeatedly attacked the victim's failure to call the police—or to reach out for help—and strongly suggested, through a skilled admixture of leading and open questions, that the victim's story in this regard was less than credible. *See, e.g.*, Victim's Trial Test. at 181 ("Q: From that point forward on any other time of January 4th or 5th, did you ever see that gun again?"); *id.* at 192 ("Q: [Are you saying] Mr. Brown forced you out of the apartment against your will . . . . And while he was doing that he was striking, hitting you?"); *id.* at 194 ("Q: Did any law enforcement at any

time ever take any photographs of your injuries? A: No . . . . Q: Did you attempt to tell anyone that you were being kidnapping [sic] or in trouble [at the grocery store while you were with Brown], that you were victim of a crime at that point? A: No."); *id.* at 195 ("Q: And am I correct you could have just started up the truck, and drove away [while Brown was inside the McDonald's]? A: Yeah."); *id.* at 196 ("Q: Did you attempt to use any telephone or have anyone call the police? A: No."); *id.* at 198 ("Q: So by going to a hotel you [were able to] avoid the police [with him]? A: Yes, sir."); *id.* at 199 ("Q: Am I correct . . . [that] there were times when you were left by yourself in the hotel room? A: Yes . . . . Q: You could have left? A: Yes. Q: And you did not do any of that? A: No."). And, in fact, at a postconviction hearing, counsel explained his strategy in precisely this way. *See* Postconviction Hr'g Tr., Fein's Testimony ("Fein's Postconviction Test.") [ECF No. 12-2] at 56 ("[T]he strategy was he actually went to work and the victim went to work with him . . . [Brown was] going about his normal business, and the victim statements after the fact weren't credible."). In short, our "[r]eview of counsel's cross-examination of this witness in its entirety reveals that counsel vigorously challenged [the victim's] recollection of the events." *McGee v. McDonough*, 2007 WL 9700527, at *10 (S.D. Fla. Dec. 21, 2007) (White, Mag. J.), *report and recommendation adopted*, 2008 WL 11399612, at *1 (S.D. Fla. Jan. 16, 2008) (Hurley, J.).

Brown, then, hasn't shown that his lawyer acted unreasonably by failing to object to, request a mistrial on, demand a curative instruction about, or impeach the victim's stray remark that Brown "beat up cops."

### 2. *Prejudice*

Nor has Brown shown that he was prejudiced by counsel's strategy. On this issue, again, we presume that the Fourth DCA simply adopted the State's position that Brown could not establish prejudice "in light of the testimony from the State's four eyewitnesses." State's 2017 Response at 222. And our review of the evidence confirms that three independent eyewitnesses testified that Brown

pulled the victim out of an apartment by her hair, pointed a gun at her head, and dragged her into his truck. *See* Trial Tr., Graham's Testimony [ECF No. 12-1] at 231, 233 (testifying that Brown "kick[ed] out" the door, "grabbed [the victim] by the hair," held a gun "[t]o her head," and "dragged [the victim] to [his] truck"); Trial Tr., Howard's Testimony [ECF No. 12-1] at 267–68 ("Oscar Brown kicked the door [open] . . . . He had a gun . . . . [He f]lashed it around to everybody . . . [and said] I should shoot all you motherfuckers . . . . He dragged [the victim] out by the hair . . . . He dragged her to the truck."); Trial Tr., Wilson's Testimony [ECF No. 12-1] at 280–81 (testifying that Brown "pointed [a firearm] at everybody" in the apartment, "grabbed [the victim] by the hair," "pull[ed]" her out, "threw her outside," and "walk[ed] with [the victim]" to a "truck"). And, of course, this evidence simply corroborated what the victim had already said. *See* Victim's Trial Test. at 152–55 (testifying that the apartment door "flew open"—even though it "had a dead bolt on it"—and that Brown entered with "a silver gun" and threatened to "kill all you M-F'ers up in here" before he "grabbed [me] by the hair," "pointed the gun to [my] head," and "dragg[ed] me outside," where he "pushed [me] into the truck").

That's more than enough for us to conclude that the jury convicted Brown, not because the victim offered a stray remark about him beating up police officers *in the past*, but because the State presented overwhelming (and fully corroborated) evidence of his attack *against her*.[12] Since there's thus no "reasonable probability" that the victim's comment affected the outcome of the trial, *Porter*, 558

---

[12] Brown insists that the victim's remark (1) was unresponsive and (2) "induced an immediate noticeable response from the jury," which (he claims) suggests that "the jury [may have] infer[red] the defendant's guilt on the present charge based on his [perceived] propensity for criminal conduct." Petition at 6 (cleaned up). We see things differently. *First*, the victim's testimony wasn't unresponsive—it went directly to counsel's question. *See* Victim's Trial Test. at 208 ("Why did you never escape from Oscar Brown, call the police, or call anyone for help?"). *Second*, as the Eleventh Circuit has said in a related context, "[t]he overwhelming evidence presented at trial establishing [the defendant's] guilt far outweighs whatever detriment, if any, [he] may have suffered as a result of his counsel's defense." *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998). Put another way, in deciding whether Brown was a violent man, the jury didn't need the uncorroborated (and passing) comment about Brown's prior interaction with law enforcement because they already had a fully corroborated (and extremely detailed) account of the violent assault he perpetrated against the victim.

U.S. at 40, Brown cannot show that he was prejudiced by his counsel's failure to act on that comment, *see Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

### B.   *Ground Three*

In Ground Three, Brown alleges that his trial counsel was ineffective "for fail[ing] to ask the trial court for a voluntary intoxication jury instruction, and for failing to properly investigate this claim." Petition at 7. He says that, although his lawyer was not "aware" that voluntary intoxication was a defense under Florida law "at the time of [his] trial," voluntary intoxication was an "absolute defense to the charges." *Id.* And, Brown adds, counsel knew about several witnesses who could've testified in support of his voluntary-intoxication defense. *Id.*

Under Florida law,[13] the voluntary-intoxication "defense is, in effect, *an admission* that [the defendant] *did the crime* but lacked the specific intent to be held criminally responsible[.]" *Rivera v. State*, 717 So. 2d 477, 485 (Fla. 1998) (emphasis added). As a result, "[f]ailure to present an intoxication defense cannot constitute ineffective assistance of counsel when the defendant asserts his innocence." *Brown v. State*, 894 So. 2d 137, 146 (Fla. 2004).

The postconviction trial court held a hearing on this claim and found that "the Defendant continued to deny his involvement in the crimes for which he was convicted in the evidentiary hearing, even though if he were to pursue a voluntary intoxication defense, it would require him to admit to

---

[13] "[Florida's] Legislature abolished the defense of voluntary intoxication when it enacted section 775.051, Florida Statutes." *Daniels v. State*, 313 So. 3d 247, 253 (Fla. 1st DCA 2021). As of this writing, then, Florida law only recognizes a voluntary-intoxication defense for defendants with "a lawful prescription issued to [them] by a practitioner." FLA. STAT. § 775.051. But the abolition of this defense only took effect on "October 1, 1999," *Straitwell v. State*, 834 So. 2d 918, 920 n.1 (Fla. 2d DCA 2003)— some ten months *after* the State charged Brown in January of 1999. *See* Information [ECF No. 11-1] at 7–9. In other words, Brown is right that voluntary intoxication was an available defense when he was charged.

each charge." Post-Hearing Order at 199–200. And the record amply confirms this finding. On this

issue, in fact, we can do no better than to quote Brown's own words on the question of his guilt:

> A. That is what they said happened.
>
> Q. But if you are relying on a voluntary intoxication defense, you have to admit [the charges] and say but I didn't know what I was doing because I was drunk.
>
> A. Yeah, I imagine that would be the– that is just like, you know, they saying that it did happen.
>
> Q. So you don't have a problem with admitting that you did all those things that you are charged with doing?
>
> A. What I would challenge you to [do] is you hook me up to a polygraph test and ask me during the polygraph test if I did all that, if I had a gun, did I shoot somebody, did I beat somebody, did I kidnap somebody, and I can almost guarantee you it would probably come back no[.]
>
> * * *
>
> A. Do you want to know why I was acquitted of all of [the aggravated assault charges]?
>
> Q. Yes, tell me why[.]
>
> A. Because I had the foresight to have Mr. Fein actually go out and take a video of that area, okay, the parking lot. Now, in that parking lot[,] there is a drain, and the drain is actually about six inches higher than the actual parking lots. And in order for that water or the shell casings to actually flow into the drain, they would have to flow uphill and water does not flow uphill.

Postconviction Hr'g Tr., Brown's Testimony ("Brown's Postconviction Test.") [ECF No. 12-2] at 43.

Brown, in short, unambiguously refused to "admit to each charge"—even in his hearing before the

postconviction trial court—which is what he would've had to do to make his voluntary-intoxication

defense viable. *See* Post-Hearing Order at 201 ("The trial record and testimony from the evidentiary

hearing reflects that the Defendant's testimony would have been substantially consistent with the

statements he had given previously. In order for the Defendant to prevail on a voluntary intoxication

claim, it would have been necessary for him to admit [ ] his involvement in the crimes . . . .

[C]onsidering the consistent statements of the Defendant [that he had no involvement], a voluntary intoxication defense would have failed. This Court finds that it is not reasonably likely that the outcome of the Defendant's trial would have been different."). And counsel cannot be blamed for failing to advance unviable defenses. *See, e.g.*, *Strickland*, 466 U.S. at 691("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error [or challenged conduct would have] had *no effect on the judgment.*" (emphasis added)); *Diaz v. Sec'y, Fla. Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("[C]ounsel, therefore, is not ineffective for failure to raise a meritless argument."*); Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) ("[C]ounsel was not ineffective for failing to raise a nonmeritorious issue.")*; Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). And that's really the end of the matter.

Even if we were prepared to ignore Brown's own refusal to admit his guilt, Brown's voluntary-intoxication claim would still fail. That's because his trial lawyer *specifically* testified in the postconviction hearing that he "was never told by [Brown] that he [Brown] was intoxicated at the time of the incident and that their defense, which was partially successful, was based *solely* on the fact that [Brown] was *denying the allegations*." Post-Hearing Order at 200 (emphasis added). Assuming that the postconviction trial court found this testimony credible—and that's really the only inference we can draw from the court's decision—then this, too, is probably sufficient for us to find that counsel did not act unreasonably. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced *by the defendant's own statements or actions.* Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." (emphasis added)).

What's more, while Brown disputed his lawyer's testimony—insisting, for instance, that he "told each of his attorneys that he had been drinking prior to and after the charged incident," Post-

Hearing Order at 199—the postconviction court determined that counsel's *strategic* decision to contest guilt "was not deficient." *Id.* at 201. And there's good reason to believe that, given the state of things, this was really the *only* defense counsel could've advanced. That's because, as counsel pointed out at the postconviction hearing, any voluntary-intoxication defense would've been "not credible" in light of how directly it would've "contradicted" Brown's "previous sworn testimony." Fein's Postconviction Testimony at 55; *see also* Brown's Postconviction Testimony at 39 ("Q: Okay. Mr. Brown, please tell Judge Gardiner why when you testified at your first trial you never told your jury that you were, I think as you said, drunk off your behind, at the time that this crime happened. A: Because I was never asked."); *id.* at 41 ("Q: You were able to drive even though you were drunk off your behind? A: Yes."). Indeed, in his prior testimony, Brown never so much as suggested that he was intoxicated. *See* Fein's Postconviction Testimony at 54 ("Q. Of course[,] he says nothing in that testimony about being intoxicated; is that correct? A. No, he does not."). And, for what it's worth, counsel thought the victim *and a second witness* were clear in their 1999 depositions that Brown was "not intoxicated." *Id.* at 67.[14]

    We cannot now—with the benefit of hindsight—second-guess these reasonable strategic choices. *See Chandler*, 218 F.3d at 1314 ("We must avoid second-guessing counsel's performance[.]"); *cf. Richter*, 562 U.S. at 109 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." (cleaned up)). This is especially true here, given that counsel's strategy was at least partially successful: After all, as Brown admitted, his lawyer got him acquitted of some very serious charges. *See* Brown's Postconviction Test. at 43

---

[14] The Respondent never submitted a copy of these deposition transcripts—so we can't independently confirm counsel's recollection of the evidence. But, by never attacking the accuracy of Mr. Fein's testimony, Brown has forfeited any such challenge. *See Campbell*, No. 16-10128, 2022 WL 468677, at *7 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances.").

(noting that he was acquitted of the aggravated-assault charges). Ultimately, as the Supreme Court has reminded us, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland*, 466 U.S. at 693. At the very least, we cannot, on this record, overturn the postconviction court's conclusion that these strategic choices *were* reasonable. *See Woods*, 575 U.S. at 316 ("[A] habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (cleaned up)).

And, of course, even if counsel's performance *had been* deficient, Brown could show no prejudice from his lawyer's decision to forgo a risky (and difficult) voluntary-intoxication defense. *See Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 727 (11th Cir. 2012) ("An intoxication defense would have required the jury to posit that Hunt caused Lane's death, and to consider his mental state at the time. Hunt's attorneys were not required to raise such a defense—even in a request for a jury instruction—when they had reasonably chosen to argue that Hunt did not cause Lane's death.").

\*\*\*

For all these reasons, we **DENY** Grounds Two and Three on the merits.

### EVIDENTIARY HEARING

We don't need an evidentiary hearing to resolve this habeas petition. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." (cleaned up)). That's true for *both* the claims we dismissed as procedurally defaulted *and* those we denied on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) ("[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" (quoting *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007)));

*Williams*, 529 U.S. at 444 ("The Court of Appeals rejected this claim on the merits under § 2254(d)(1), so it is unnecessary to reach the question whether § 2254(e)(2) would permit [or restrict] a hearing on the claim."); *Schriro*, 550 U.S. at 474 (refusing to require the trial court to hold an evidentiary hearing where "the record refutes the applicant's factual allegations or otherwise precludes habeas relief").

### CERTIFICATE OF APPEALABILITY

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA with respect to our merits decisions, therefore, Brown must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Similarly, "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

We don't think that reasonable jurists would find our resolution of the constitutional claims in Grounds Two and Three debatable or wrong. Nor do we believe that jurists of reason would find our procedural rulings debatable. So, any request for a COA is denied.

### CONCLUSION

Having thoroughly reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition is **DISMISSED** as to Grounds One, Four, and Five and **DENIED** as to Grounds Two and Three. Any request for a COA is **DENIED**. Any demand for an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of March 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Oscar Brown, *pro se*
       counsel of record